BY: JEFFREY PHILIP PAUL, ESQ.
124 East Chestnut Street
Lancaster, PA 17602
(717) 735-7545
IDENTIFICATION NUMBER: 10182
and
TERI B. HIMEBAUGH, ESQ                          ATTORNEYS FOR PLAINTIFF
220 Stallion Lane
Schwenksville, PA 19473
(610) 287-0216
IDENTIFICATION NUMBER:  53603

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| JONATHAN B. EICHELMAN | : |
| 5 Willow Valley Drive | : |
| Lancaster, PA 17602 | : |
|     Plaintiff | : |
| | : |
|     v. | : |
| | : |
| LANCASTER COUNTY | : |
| 50 N. Duke St. | : |
| Lancaster, PA  17608-3480 | : |
|     and | : |
| VINCENT GUARINI, WARDEN | : |
| County of Lancaster Prison | : |
| 625 E. King St. | : |
| Lancaster, PA  17602-3199 | : |
|     and | :  CIVIL NO. |
| DEPUTY WARDEN DOE | : |
| County of Lancaster Prison | : |
| 625 E. King St. | : |
| Lancaster, PA  17602-3199 | : |
|     and | : |
| CORRECTIONS OFFICER M. KING | : |
| County of Lancaster Prison | : |
| 625 E. King St. | : |
| Lancaster, PA  17602-3199 | : |
|     and | : |
| CORRECTIONS OFFICER TORRES | : |
| | |
|     and | :JURY TRIAL DEMANDED |

1

CORRECTIONS OFFICER J. VOLROTH                              :
County of Lancaster Prison                                 :
625 E. King St.                                            :
Lancaster, PA  17602-3199                                  :
        and                                  :
CORRECTIONS OFFICER LAMBERT                                 :
County of Lancaster Prison                                 :
625 E. King St.                                            :
Lancaster, PA  17602-3199                                  :
        and                                  :
CORRECTIONS OFFICER BORACK                                  :
County of Lancaster Prison                                 :
625 E. King St.                                            :
Lancaster, PA  17602-3199                                  :
        and                                  :
CORRECTIONS OFFICER NEFF                                    :
County of Lancaster Prison                                 :
625 E. King St.                                            :
Lancaster, PA  17602-3199                                  :
        and                                  :
CORRECTIONS OFFICER WALTON                                  :
County of Lancaster Prison                                 :
625 E. King St.                                            :
Lancaster, PA  17602-3199                                  :
        and                                  :
CORRECTIONS OFFICER T. SULTZBACH                            :
County of Lancaster Prison                                 :
625 E. King St.                                            :
Lancaster, PA  17602-3199                                  :
        and                                  :
CORRECTIONS OFFICERS JOHN/JANE DOE (1-5)                    :
County of Lancaster Prison                                 :
625 E. King St.                                            :
Lancaster, PA  17602-3199                                  :
        and                                  :
DR. DOE                                                    :
Medical Department                                         :
County of Lancaster Prison                                 :
625 E. King St.                                            :
Lancaster, PA  17602-3199                                  :
        And                                  :
NURSE STEF DOE                                             :
Medical Department                                         :
County of Lancaster Prison                                 :
625 E. King St.                                            :
Lancaster, PA  17602-3199                                  :

## PLAINTIFF'S CIVIL ACTION COMPLAINT

1.      Plaintiff, JONATHAN EICHELMAN, is an adult citizen and resident of the Commonwealth of Pennsylvania residing as captioned. At all times material he was a self employed painter

2.      Defendant, VINCENT GUARINI, was at all material times the Warden of Lancaster County Prison, responsible for ensuring the safety of inmates incarcerated in Lancaster County Prison,  making and enforcing policies, practices and procedures within the prison as well as providing for adequate training and supervision of correctional staff at the prison. At all times material, this defendant acted under color of state law and authority and within the scope of his employment. Defendant Guarini is being sued both individually and in his official capacity as an officer, agent, and/or employee of Defendant, Lancaster County.

3.      Defendant, DEPUTY WARDEN DOE,was at all material times the Deputy Warden at Lancaster County Prison, making, enforcing and administering policies,  practices and procedures within the prison as well as providing for adequate training and supervision of correctional staff at the prison. At all times material, this defendant acted under color of state law and authority and within the scope of his employment. Defendant, Deputy Warden Doe is being sued both individually and in his official capacity as an officer, agent, and/or employee of Defendant, Lancaster County.

4.      Defendant, CORRECTIONAL OFFICER M. KING, was at all material times an employee of the Defendant, Lancaster County, acting as a correctional officer within Lancaster County Prison. At all times material Defendant King acted under color of state law and within the scope of his employment. Defendant King is being sued

individually and in his official capacity as an officer, agent, and/or employee of Lancaster County.

5.     Defendant, CORRECTIONAL OFFICER TORRES, was at all material times an employee of the Defendant, Lancaster County, acting as a correctional officer within Lancaster County Prison. At all times material Defendant Torres acted under color of state law and within the scope of his employment. Defendant Torres is being sued individually and in his official capacity as an officer, agent, and/or employee of Lancaster County.

6.     Defendant, CORRECTIONAL OFFICER VOLROTH, was at all material times an employee of the Defendant, Lancaster County, acting as a correctional officer within Lancaster County Prison. At all times material Defendant Volroth acted under color of state law and within the scope of his employment. Defendant Volroth is being sued individually and in his official capacity as an officer, agent, and/or employee of Lancaster County.

7.     Defendant, CORRECTIONAL OFFICER LAMBERT, was at all material times an employee of the Defendant, Lancaster County, acting as a correctional officer within Lancaster County Prison. At all times material Defendant Lambert acted under color of state law and within the scope of his employment. Defendant Lambert is being sued individually and in his official capacity as an officer, agent, and/or employee of Lancaster County.

8.     Defendant, CORRECTIONAL OFFICER NEFF, was at all material times an employee of the Defendant, Lancaster County, acting as a correctional officer within Lancaster County Prison. At all times material Defendant Neff acted under color of state

law and within the scope of his employment. Defendant Neff is being sued individually and in his official capacity as an officer, agent, and/or employee of Lancaster County.

9.      Defendant, CORRECTIONAL OFFICER BORACK, was at all material times an employee of the Defendant, Lancaster County, acting as a correctional officer within Lancaster County Prison. At all times material Defendant Borack acted under color of state law and within the scope of his employment. Defendant Borack is being sued individually and in his official capacity as an officer, agent, and/or employee of Lancaster County

10.     Defendant, CORRECTIONAL OFFICER WALTON, was at all material times an employee of the Defendant, Lancaster County, acting as a correctional officer within Lancaster County Prison. At all times material Defendant Walton acted under color of state law and within the scope of his employment. Defendant Walton is being sued individually and in his official capacity as an officer, agent, and/or employee of Lancaster County.

11.     Defendant, CORRECTIONAL OFFICER T. SULTZBACH, was at all material times an employee of the Defendant, Lancaster County, acting as a correctional officer within Lancaster County Prison. At all times material Defendant Sultzbach acted under color of state law and within the scope of his employment. Defendant Sultzbach is being sued individually and in his official capacity as an officer, agent, and/or employee of Lancaster County.

12.     Defendant, CORRECTIONAL OFFICERS JOHN DOE 1-5 were, at all material times employees of the Defendant, Lancaster County, acting as a correctional officers within Lancaster County Prison. At all times material Defendants Doe acted

under color of state law and within the scope of their employment. Defendants Doe are being sued individually and in their official capacities as officers, agents, and/or employees of Lancaster County.

13.    Defendant, DOCTOR DOE, was, at all material times an employee of the Defendant, Lancaster County, acting as a physician within Lancaster County Prison.  At all times material Defendant, Doctor Doe acted under color of state law and within the scope of his employment.  Defendant, Doctor Doe is being sued individually and in his official capacity as an officer, agent, and/or employee of Lancaster County.

14.    Defendant, NURSE STEF DOE, was at all material times an employee of the Defendant, Lancaster County, acting as a nurse within Lancaster County Prison.  At all times material Defendant Nurse Stef Doe acted under color of state law and within the scope of her employment.  Defendant Nurse Stef Doe is being sued individually and in her official capacity as an officer, agent, and/or employee of Lancaster County.

15.     The court has jurisdiction over the Federal Law Claims pursuant to 28 U.S.C. §§ 1331 and  1343 and jurisdiction over the State Law Claims, pursuant to the principles of pendant and ancillary jurisdiction.

16.     Venue is proper under 28 U.S.C. § 1391(b) because the cause of action upon which the complaint is based arose in Lancaster County, Pennsylvania, which is in the Eastern District of Pennsylvania.

17.     On or about June 2, 2005 an unidentified male pulled up behind another car with two women and a child in it, after the two vehicles had gone through the drive through at the Taco Bell, located on Route 426, Lincoln Highway. After receiving their food and leaving the Taco Bell, the unidentified male followed the ladies' car and ultimately pulled along side it.

The unidentified male pulled out a gun and shot at the ladies' car, striking the child in the leg. The unidentified male drove off.

18.     Plaintiff, who had been at home and in bed at the time that the above cited crime was committed, was however arrested related to this crime on June 3, 2005.

19.     After being arraigned, Plaintiff was taken to the Lancaster County prison as a pre-trial detainee where he was processed and placed in a commitment cell (a.k.a. "the tank") with six other inmates.

20.     While sitting in the tank, Plaintiff observed two Hispanic males who were being processed. They and the correctional officers present repeatedly looked at him and smiled.

21.     In full view of the correctional officers, the two Hispanic males entered the tank. One of the Hispanic males immediately threw his clothes down and punched the Plaintiff in the left side of his head, while Plaintiff was sitting on a bench facing Correctional Officers, in full view of the Correctional Officers.

22.     Plaintiff asked the Hispanic male why he punched him and the Hispanic male responded "The guard said you were sexually abusing little boys."

23.     The correctional officers observed Plaintiff being assaulted but they did nothing except laugh.

24.     It is believed and averred that the above assault was witnessed by Lancaster County Constable Aponte. Jerry Crump, liaison between the Lancaster County Prison and the Lancaster County Courthouse, told Constable Aponte that "word" had been sent upstairs when Plaintiff arrived by prison officials that Plaintiff was to be beaten for what Plaintiff had allegedly done (i.e. shot a child).

25.     At approximately 8:00 p.m., Plaintiff, a pre-trial detainee, was escorted to cell block 3-I, which it is believed and averred is a maximum or closed custody security block containing violent inmates.

26.     Prior to Plaintiff's being escorted to cell block 3-1 he was processed by Correctional Officers, and during the processing Plaintiff complained to the Correctional Officers that he was in fear for his life and that he had just been punched in the side of the head by another inmate, and he demanded to know what was going to be done about his safety. However, in response, the Correctional Officers merely looked at Plaintiff and smirked and grinned.

27.     Prior to his arrival on this block, Defendant Correctional Officer M. King announced to the other inmates on the block that he knew something that they didn't know. Defendant Correctional Officer M. King pointed to a newspaper story about the Taco Bell shooting and a story about a rapist and told the inmates that the perpetrator was downstairs and coming to their block soon. Defendant Correctional Officer M. King then proceeded to walk around the cell block announcing to all the inmates that the Taco Bell 'child shooter' and "child rapist' were going to be on their cell block in cell 409 I.  Defendant Correctional Officer King proceeded to tell the inmates that something should happen to the Plaintiff.

28.     Upon hearing that the Taco Bell 'child shooter' and 'child rapist' was going to be on their cell block and that Defendant Correctional Officer King thought something should happen to the Plaintiff, the other inmates began to whistle and shout.

29.     Immediately upon his arrival in 3-I block, Plaintiff was accosted by inmates attempting to extort money from him, telling him that he had to pay them if he wanted to stay

alive, that he would have to pay these inmates for his safety, that they were going to take his food, and that they were going to do what they wanted to do with him.

30.     Plaintiff was placed in a cell with an inmate named Joseph Grunder. Mr. Grunder advised Plaintiff that something very bad was going to happen to Plaintiff and that the correctional officers all knew about it.

31.     After breakfast on June 5, 2005 the other inmates began to taunt Plaintiff, stating that they were going to get him and referring to him as a 'child shooter' and rapist. One inmate told Plaintiff that he was going to be his "bitch", and he was going to accept everything that happened to him "like a man". Defendant Correctional Officer T. Sultzbach was present during these verbal threats but failed to intervene and/or discipline any inmates.

32.     It is believed and averred that an inmate told Defendant Correctional Officer T. Sultzbach that Plaintiff should be moved off the block. It is believed and averred that Defendant Correctional Officer T. Sultzbach did not take any action to have Plaintiff placed in protective custody.

33.     Shortly thereafter, three inmates entered Plaintiff's cell and threatened Plaintiff, telling him again he was going to accept "everything and anything that happened to him like a man". These inmates threatened and taunted Plaintiff and they got into Plaintiff's face.

34.     On June 6, 2005, Defendant Correctional Officer Torres was observed speaking with several Hispanic inmates prior to the doors to the cells being opened for medication. Defendant Correctional Officer Torres was heard announcing to these inmates that "(t)hat nigger shot a child. I don't care what happens to him. Are you going to let him get away with shooting that kid? What are you guys going to do? Were counting on you. "

35.     Defendant Correctional Officer Torres thereupon suggested that they beat Plaintiff up. Defendant Correctional Officer Torres then approached inmate Carlos Colon and asked him specifically if he wanted to participate because Plaintiff was the guy who shot that kid.

36.     Defendant Correctional Officer Torres has advised individuals that he had given a note to supervisors advising them that Plaintiff was going to be assaulted, but that said notice was ignored by the Defendant John Doe supervisory staff.

37.     Later that afternoon, Plaintiff, who was in his cell, was awakened from a nap by the sound of his cell door being opened. Plaintiff observed a large dark skinned/Hispanic inmate and several other inmates walk into his cell, grab his cellmate, Joseph Grunder, and throw him out of the cell. It is believed and averred that two of these males were Jose Santiago and Carlos Dominguez. The dark skinned/Hispanic inmate threw Plaintiff's cellmate, Joe Grunder, out of the cell and closed the cell door behind him.

38.     The inmates proceeded to brutally beat and hit the Plaintiff, who was screaming "help, help, someone help me!"

39.     It is believed and averred that Defendant Correctional Officers including but not limited to Defendant Correctional Officers Torres, Volroth, Lambert, Neff and Borack, were present in the area just during the assault. They observed the assault, heard Plaintiff's cry for help, but deliberately and maliciously failed to do anything to intervene or stop the assault.

40.     After observing the assault, Defendant Correctional Officer Torres walked back to his desk and returned shortly thereafter yelling "Alto, alto, afuerdo" (Stop, stop, Get out.).

41.     Plaintiff was eventually able to get away from the inmates who were beating him, and he exited the still unlocked cell door, bleeding profusely from his face, nose and eyes,

and when he got out of the cell, Plaintiff observed Defendant Correctional Officers with rubber gloves for cleaning up bodily fluids already on their hands standing nearby, laughing.

42.     Plaintiff staggered toward the Defendant Correctional Officers, but when he made it to the front of the desk of the Correctional Officers, one of the officers screamed at Plaintiff to stand in the "fucking" corner until he told him to move.

43.     The inmates who had assaulted Plaintiff were permitted by the Defendant Correctional Officers to leave the scene.

44.     Shortly after the beating, Plaintiff was taken to the infirmary where pictures were taken of his injuries and the injuries were cleaned.  Medical personnel recommended that x-rays be taken, however, this was not done.  While Plaintiff was in the infirmary a guard began to scream at him, as Plaintiff was spitting blood.  This guard told Plaintiff to "shut the fuck up" or he (the Correctional Officer) was going to "beat the hell" out of Plaintiff again.  He stated to Plaintiff that he just had a black eye and that he couldn't understand why Plaintiff was so upset, and that he had seen a lot worse "in here" (the prison).  He told Plaintiff to stop spitting blood, and this guard screamed at Plaintiff and intimidated him.

45.     Instead of being placed in protective custody, Plaintiff was returned to his cell on 3-I block.  Plaintiff was heard saying that he was going back to his cell to die.

46.     Other than being given eye drops, occasional ice for his eye and Tylenol, and despite multiple requests to prison officials, Plaintiff was not provided appropriate medical treatment, including but not limited to x-rays and appropriate pain medication for his injuries for a period of approximately three days.  Plaintiff's requests to be able to take a shower were also rebuffed, and he lay in his cell bloodied and battered, in blood soaked clothes, on blood soaked towels, and the Correctional Officers refused to give Plaintiff clean clothes and towels.

47.     During that three day period, Defendant Correctional Officers permitted other inmates to harass and terrorize the Plaintiff. The other inmates would come up to Plaintiff's cell, shake his now locked cell door and tell him that if they get their hands on him they were going to "fucking" kill him, "fuck him up the ass", and make him suck their "dicks". Defendant Correctional Officers observed this but failed to take any action.

48.     During this time period, Defendant Correctional Officer Torres was heard and seen laughing about the assault on Plaintiff.

49.     It is also believed and averred that shortly after Plaintiff was returned to the block, a fellow inmate, Bennett Cotton approached Defendant Corrections Officer Walton and told him that they had better get Plaintiff off the block because it wasn't safe for Plaintiff. Defendant Correctional Officer Walton responded "Fuck that man. I don't care about no child rapist or child shooter. He deserves what he gets."

50.     Also during this three day period, Plaintiff was deprived food. On some occasions Plaintiff was given absolutely no food, and when food trays were placed outside the cell 'gate' by Defendant Correctional Officers, they were placed where other inmates could grab it before Plaintiff could get to it. Plaintiff believes and avers that Defendant Correctional Officers observed Plaintiff's food being taken by other inmates and failed to do anything to stop it.

51.     During that three day period, Plaintiff was in severe pain. His left eye was blood red and swollen shut. He was also emotionally distraught and terrified.  He was not permitted to take a shower to wash off the dried blood, and he was denied medical treatment.

52.     On or about the afternoon of June 8, 2005, Plaintiff was moved to a cell block where sexual predators were housed.

53.   Plaintiff was placed in a cell and given food. Later that evening he was moved again.

54.   Prior to Plaintiff's being moved he was called on the intercom and told on the intercom to get his things together, and he was going to be moved.  Therefore, Plaintiff gathered his belongings and walked through an unlocked cell door.  However, as Plaintiff was walking out Defendant Correctional Officer Doe shouted "Get back in your fucking cell or I am going to personally beat your ass again."  So Plaintiff returned to his cell.

55.   Thereafter Plaintiff received a second call from Guard Doe that he was going to be moved.  The doors opened, and Guard Doe came over to Plaintiff and took Plaintiff through some doors.  As they were walking by other inmates Guard Doe loudly exclaimed: Oh, by the way, why did you shoot at those girls at Taco Bell?  Why did you shoot that little boy?"  Guard Doe also laughed.

56.   Shortly thereafter Plaintiff called Guard Doe over the intercom and asked if he could take a shower.  Guard Doe denied this request, without any explanation, and he stated to Plaintiff that he should ask him again "tomorrow" and that he would think about it.

57.   Sometime during the early hours of next morning, June 9, 2005, Plaintiff was awakened, handcuffed and placed in a West Lampeter Township police cruiser by Officer Covey.

58.   Plaintiff was ultimately released from police custody and all the charges were dropped.

59.   After returning home and showering, Plaintiff was taken by his mother to Lancaster General Hospital. He was immediately admitted to the intensive care unit. It was discovered that the bones around his right eye had been shattered (orbital blow out floor

fracture extending into the right ethmoid sinus). He will also require dental work to several top teeth that had been displaced. He was advised that he sustained rib contusions and a lacerated liver. Plaintiff also suffered from double vision and his face, lips and cheeks were numb.

60.     The above cited injuries were directly and proximately caused by Defendants' acts and omissions. As a result of sustaining said injuries, Plaintiff has and will in the future likely continue to suffer from pain, medical costs and related expenses for which he is entitled to compensation for.

61.     Plaintiff has been diagnosed as having Post Traumatic Stress Disorder proximately and directly caused by this incident. His symptoms include but are not limited to inability to sleep, poor appetite, nausea, stress, panic attacks, depression and worry.  It is anticipated that Plaintiff will in the future also continue to have severe emotional distress, humiliation, loss of life's pleasures and pain and suffering related to the assault for which he is entitled to compensation for.

62.     As a direct and proximate result of the above injuries, Plaintiff was not able to work for a period of time, thus causing Plaintiff to also sustain lost income.

63.     As a direct and proximate result of the aforementioned actions of the defendants, plaintiff has and will hereinafter incur other financial expenses and losses.

## COUNT I - 42 U.S.C. § 1983
## FAILURE TO PROTECT
## CORRECTIONAL OFFICERS KING, SULTZBACH, TORRES, VOLROTH, LAMBERT, BORACK, WALTON, NEFF AND JOHN DOES 1-5

64.     Paragraphs 1 through 63 are incorporated herein by reference, as though each were fully set forth herein at length.

65.     Plaintiff believes and avers that Defendant Correctional Officers

deliberately, recklessly and maliciously failed to take reasonable measures to ensure Plaintiff's safety from attack by other inmates and instead acted in such a manner as to encourage, facilitate and incite inmates to assault other inmates such as the Plaintiff.

66.     The above conditions of incarceration posed a substantial risk of harm to the Plaintiff of which the Defendant Correctional Officers were aware and to which Defendants were deliberately indifferent.

67.     Plaintiff, Jonathan Eichelman's injuries were a foreseeable and a direct consequence of all of the above failures, acts and omissions by the Defendants.

68.     All of these actions violated the plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution and Article I §§ 8 and 9 Constitution of the Commonwealth of Pennsylvania and the laws of the United States and the Commonwealth of Pennsylvania and are in violation of plaintiff's rights pursuant to 42 U.S.C. § 1983.

69.     The above-described actions of the defendants were so malicious, intentional, and reckless and displayed such a reckless and deliberate indifference to the plaintiff's rights and well being, that the imposition of punitive damages is warranted.

**WHEREFORE**, pursuant to 42 U.S.C. § 1983, Plaintiff, Jonathan Eichelman, demands compensatory and punitive damages against defendants jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, plus interest, costs, attorney's fees and delay damages.

**COUNT II – 42 U.S.C. §1983**
**BYSTANDER LIABILITY**
**CORRECTIONAL OFFICERS KING. SULTZBACH, TORRES, VOLRATH,**
**LAMBERT, BORACK, WALTON, NEFF AND JOHN DOES 1-5**

70.     Paragraphs 1 through 69 are incorporated herein by reference, as though each were fully set forth herein at length.

71.     Plaintiff also asserts that Defendant Correctional Officers failed to intervene and/or in any way attempt to stop the assault once it had begun.

72.     Plaintiff believes and therefore avers that Defendant Correctional Officers deliberately, recklessly and maliciously failed to intervene and/or in any way attempt to stop the assault once it had begun.

73.     Plaintiff, Jon Eichelman's injuries were a foreseeable and a direct consequence of all of the above failures, acts and omissions by the Defendants.

74.      All of these actions violated the Plaintiff's rights under the 8th and 14th Amendments to the United States Constitution and Article 1 §8 and 9 Constitution of the Commonwealth of Pennsylvania and the laws of the United States and the Commonwealth of Pennsylvania and are in violation of Plaintiff's rights pursuant to 42 U.S.C. §1983.

75.     The above described actions of the Defendants were so malicious, intentional, and reckless and displayed such a reckless and deliberate indifference to the Plaintiff's rights and well being, that the imposition of punitive damages is warranted.

**WHEREFORE,**  pursuant to 42 U.S.C. §1983, Plaintiff, Jonathan Eichelman, demands compensatory and punitive damages against Defendants jointly and/or separately in an amount in excess of $150,000.00, plus interest, costs, attorneys' fees and delay damages.

**COUNT III- 42 U.S.C. § 1983**
**CONSPIRACY**
**WARDEN  GUARINI,  DEPUTY WARDEN DOE**
**CORRECTIONAL OFFICERS KING, SULTZBACH, TORRES, VOLROTH,**
**LAMBERT, BORACK, WALTON, NEFF AND JOHN DOES 1-5**

76.     Paragraphs 1 through 75 are incorporated herein by reference, as though each were fully set forth herein at length.

77.     Defendants entered into an agreement and/or reached a meeting of their minds to violate Plaintiff's Constitutional Rights by permitting, encouraging, facilitating and inciting other inmates to cause physical harm to the Plaintiff.

78.     As detailed above, Defendants, entered into a conspiracy to harm the Plaintiff, and deny the Plaintiff of his constitutional rights and privileges under the Constitution of the United States and the laws of the United States and of the Commonwealth of Pennsylvania.

79.     Defendants performed overt acts in furtherance of the conspiracy.

80.     The conspiracy directly and proximately resulted in harm to the Plaintiff including the deprivation of his rights and privileges under the Constitution of the United States and the Laws of the Commonwealth of Pennsylvania

81.     As a direct and proximate result of the malicious, intentional and reckless actions of the Defendants in carrying out the conspiracy to violate the Plaintiff's rights, the Plaintiff suffered injuries, which are described above.

82.     The above described actions of the Defendants in their individual capacities were so malicious, intentional, and reckless and displayed such a reckless indifference to the Plaintiff's rights and well-being that the imposition of punitive damages is warranted.

**WHEREFORE**, pursuant to 42 U.S.C. § 1983, plaintiff, Jonathan Eichelman, demands compensatory and punitive damages against defendants jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, plus interest, costs, attorney's fees and delay damages.

**COUNT IV- 42 U.S.C. §1983**
**POLICY, CUSTOM, PATTERN AND PRACTICE**
**JONATHAN EICHELMAN V. LANCASTER COUNTY, WARDEN GUARINI,**
**DEPUTY WARDEN DOE**

83.    Paragraphs 1 through 82 are incorporated herein by reference, as though each were set forth herein at length.

84.    The Plaintiff, Jonathan Eichelman, believes and therefore avers that Defendants have adopted and maintained for many years recognized and accepted policies, customs, and practices within the prison, including but not limited to the following, which knowingly place inmates such as the Plaintiff in dangerous positions and/or increase the risk of danger to inmates such as the Plaintiff. Said policies, customs and practices ultimately resulted in Plaintiff's being injured:

  A.  Having a custom, policy and practice of permitting correctional officers to discuss with other inmates the nature of the crimes that new inmates/pre-trial detainees are charged with, thereby encouraging, facilitating and inciting potential inmate on inmate assaults;

  B.  Having a custom, policy and practice whereby correctional officers facilitate, encourage and incite inmate fights by taunting inmates and allowing inmates to taunt and threaten other inmates;

  C.  Having a custom, policy and practice whereby correctional officers facilitate, encourage and incite inmate fights by opening otherwise locked cell doors, allowing violent inmates access to other inmates;

D.  Having a custom, policy and practice whereby correctional officers facilitate, encourage and incite inmate on inmate assaults by failing to properly and timely respond to them and break them up;

E.  Having a custom, policy and practice of ignoring and/or downplaying the seriousness of inmate on inmate violence, thereby acquiescing to an environment where inmate on inmate violence is accepted;

F.  Having a custom, policy and practice of failing to properly train, supervise, investigate and discipline correctional staff in order to prevent inmate on inmate assaults from occurring;

G.  Having a custom, policy and practice of improperly classifying and/or housing pre-trial detainees with violent convicted individuals;

H.  Having a custom, policy and practice of failing to appropriately identify inmates who should be placed in protective custody and/or failing to place those inmates in protective custody;

I.  Having a custom, policy and practice of failing to ensure that inmates (including but not limited to pre-trial detainees) are humanely treated at all times, including but not limited to being provided food and timely medical treatment;

J.  Having a custom, policy and practice of failing to provide adequate, proper and timely medical care to individuals such as the Plaintiff who have been assaulted within the facility;

85.     The defendants have been deliberately indifferent to individuals such as the plaintiff for the reasons set forth above, which deliberate indifference violates the plaintiff's rights under the Eighth and Fourteenth Amendments of the Constitution of the United States, Article I §§ 8 and 9 of the Constitution of the Commonwealth of Pennsylvania, the laws of the United States and of the Commonwealth of Pennsylvania and was in violation of 42 U.S.C. §1983.

WHEREFORE, pursuant to 42 U.S.C. 1983 and 1988, plaintiff, Jonathan Eichelman demands compensatory against defendant in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, plus interest, costs, attorney's fees and delay damages.

## COUNT V- 42 U.S.C. §1983
## DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS
## DOCTOR DOE AND NURSE STEF DOE

86.     Paragraphs 1 through 85 are incorporated herein by reference, as though each were set forth herein at length.

87.     Plaintiff avers that Defendant medical providers were aware of the nature of his serious injuries caused by the above cited assault, but they acted with deliberate indifference when they failed to provide him with timely and appropriate medical care and treatment.

88.     Defendant medical providers were additionally deliberately indifferent to Plaintiff's serious medical needs in that their lack of prompt and appropriate medical care exacerbated Plaintiff's physical and emotional pain and suffering.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff, Jonathan Eichelman, demands compensatory and punitive damages against defendants jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, plus interest, costs, attorney's fees and delay damages.

BY: _____

**JEFFREY PHILIP PAUL, ESQ.**
**124 EAST CHESTNUT STREET**
**LANCASTER, PA 17602**
**TELEPHONE NO.: (717) 735-7545**
**ATTORNEY I.D. NO.: 10182**
**ATTORNEYS FOR PLAINTIFF –**
**JONATHAN B. EICHELMAN**

BY: _____

**TERI B. HIMEBAUGH, ESQ.**
**220 STALLION LANE**
**SCHWENKSVILLE, PA 19473**
**TELEPHONE NO.: (610) 287-0216**
**ATTORNEY I.D. NO.: 53603**
**ATTORNEYS FOR PLAINTIFF –**
**JONATHAN B. EICHELMAN**

JURY TRIAL DEMANDED